UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
JERRELL MILLER, aka JERRELL
MILLER/HYMAN,

                            Petitioner,         MEMORANDUM & ORDER

          -against-                       15-CV-2741 (ENV)(LB)

THE PEOPLE OF THE STATE OF NEW YORK,
SUPERINTENDENT OF G.M.C.F.,

                            Respondents.
------------------------------------------------------------ x
VITALIANO, D.J.

    Jerrell Miller has filed a *pro se* petition for a writ of *habeas corpus*, directed at his state court conviction, pursuant to 28 U.S.C. § 2254.[1] See Pet., Dkt. 1. For the reasons set forth below, the writ is denied and the petition is dismissed.

## Background

I.    <u>The Robberies</u>

    Miller's convictions arose out of a series of bank robberies in Queens in December 2009.[2] At approximately 4:30 p.m. on December 11, he approached teller Alex Goncharenko at the Bank of America branch located at 107-26 Continental Avenue. *See* Dkt. 13-1 ("Record") at 1. Miller handed Goncharenko a note that read, "I want $2,000 dollars, if not, I will wait until

---

[1] Miller also filed an unauthorized "amended" petition that includes the same claims as his initial filing, set forth in virtually identical language. *See* Am. Pet., Dkt. 19. Since this "amended" petition is not actually amended in substance, it is dismissed as duplicative.

[2] Because Miller was convicted, *see People v. Miller*, 109 A.D.3d 842, 971 N.Y.S.2d 63 (2d Dep't 2013) (denying appeal), the Court recites the facts in the light most favorable to the jury's verdict, *see Garbutt v. Conway*, 668 F.3d 79, 80 (2d Cir. 2012).

1

you come out." *Id.* As Goncharenko walked away from the teller window, Miller ran out of the bank, without receiving any money. *Id.* The bank had taken a photograph of Miller at the teller window, which it turned over to investigators. *Id.*

Later that day, at around 5:15 p.m., Miller tried a more aggressive approach at the Capital One branch located at 119-01 Metropolitan Avenue. R. at 3. He gave teller David Conneely a note that stated, "I want $2,000 dollars. I have a gun. If not I'll wait until you come out." *Id.* Whether it was the mention of a gun or that he stayed at the window or for some other reason, this time Miller succeeded. Conneely handed him $1,179, and Miller left the bank. Again, a photograph taken of Miller at the teller window was given to the police. *Id.*

Miller struck a third time on December 21, at the Apple Bank branch located at 102-29 Queens Boulevard. R. at 7. His note to teller Irina Mikhaylova upped the ante: "I want $3,000. I have a gun. It [*sic*] not I will wait until you come outside. No dye packs," the note read. *Id.* Mikhaylova turned over $2,500, and Miller left. *Id.* This encounter, like the others, was captured by a camera at the teller station. *Id.*

After a brief hiatus, Miller dove back into his crime spree. His next strike came on December 26, at the Chase Bank branch located at 175-62 Hillside Avenue. R. at 5. He passed a note to teller Jana Bhujvan demanding money and warning that he carried a gun. *Id.* Bhujvan handed Miller $3,000 and the demand note. Then, in familiar fashion, Miller left, but was caught on camera once more. *Id.*; *see also id.* at 245.

He was arrested on December 30, 2009. R. at 67. In addition to the photographs taken of him at the banks, police recovered three of the four demand notes, lifting fingerprints that matched Miller's from two of them. *Id.* at 246. Upon questioning by investigators, Miller admitted that he wrote the notes, was, indeed, the man pictured in the photographs, and had

2

committed the crimes. *Id.*; *see also id.* at 1-8.

II. <u>Indictment and Pre-Trial Proceedings</u>

In April 2010, Miller was charged with one count of robbery in the first degree, two counts of robbery in the third degree, and one count of attempted robbery in the third degree. R. at 45. The first page of the indictment listed each of these charges as well as the corresponding section of New York Penal Law ("NYPL") offended. *Id.* Pages two and three of the indictment stated the counts individually and set forth the pertinent supporting facts. *Id.* at 46-47.

In preparation for trial, defense counsel advanced a full panel of pre-trial motions, seeking a bill of particulars, inspection of proposed evidence and the disclosure of documents and photo exhibits. R. at 9-14. Miller chipped in a *pro se* motion to dismiss the indictment. *Id.* at 15. On May 17, 2010, the trial court entered an order that embraced the fulsome disclosure proposed by the People and ordered the prosecution to provide a bill of particulars detailing categorical information as covered by New York's criminal procedures. In the same omnibus order, the court denied Miller's motion to dismiss, finding a sufficient showing on each essential element of each charge to support indictment. *Id.* at 110-11. The trial court later denied Miller's motion to reconsider its denial of dismissal. The trial court would go on to rebuff Miller's repeated efforts demanding reconsideration right up until the opening of trial. *Id.* at 134-35.

III. <u>Trial and Appeal</u>

Following a jury trial in Queens County Supreme Court, Miller was convicted, on November 14, 2011, of one count of robbery in the second degree, two counts of robbery in the third degree, and one count of attempted robbery in the third degree. R. at 172, 180. Although Count One was charged as first-degree robbery, the jury found Miller guilty of the lesser included charge of robbery in the second degree, apparently accepting his affirmative defense

3

that the "weapon" used during the robbery was not a real gun. *Id.* at 180. On December 15, 2011, Miller was sentenced, concurrently, to a prison term of 15 years, plus 5 years of post-release supervision. *Id.* at 187.

Miller appealed to the Appellate Division, Second Department, arguing that the indictment was jurisdictionally defective because it "failed to allege the defendant committed acts constituting every material element of the crime" and "[t]he counts in the indictment failed to cite the applicable sections of the Penal Law and sufficiently track[ ] the language to afford the defendant fair notice of the charge against him." R. at 238. Elaborating on his claim, he argued that an essential element of robbery is "the use or [threat of] immediate use of physical force to compel a person to deliver up the property," which in his case was based on the act of handing a note to each bank teller threatening to use immediate force. *Id.* at 238. Miller faulted the indictment for alleging robbery without making any reference to the notes. *Id.* at 239. Unmoved by the argument, on September 11, 2013, the Second Department denied Miller's appeal on the merits, holding that "the indictment was not jurisdictionally defective, as it cited the applicable statutes and sufficiently tracked the language thereof to give [Miller] fair notice of the charges against him."[3] *Id.* at 277.

While his direct appeal to the Second Department was pending, Miller sought a state writ of *habeas corpus* upstate in Franklin County Supreme Court, contending anew that the indictment had been defective. R. at 188. On November 30, 2012, that court denied the petition *sua sponte* on the ground that Miller was required to raise the argument presented in his petition

---

[3] *People v. Miller*, 109 A.D.3d 842, 842, 971 N.Y.S.2d 63 (2d Dep't 2013).

4

on direct appeal or in a New York Criminal Procedure Law § 440 motion prior to petitioning for state *habeas* relief. *Id.* at 188-89. Miller appealed to the Appellate Division, Third Department, which affirmed the decision on July 29, 2013. *Id.* at 221-22. Miller did not seek leave to appeal. *See* Opp'n Mem. at 7-8, Dkt. 12-1.

On August 16, 2013, Miller filed his first federal *habeas* petition, which, in light of his then-pending state court direct appeal, the Court dismissed without prejudice for failure to exhaust his claims in state court. *See Miller v. People*, No. 13-CV-4673 (ENV), Dkt. 7. Paralleling his federal court activity, Miller sought leave to appeal the Second Department's decision to the New York Court of Appeals, which denied his leave application on May 6, 2014.[4] R. at 286. Miller filed the instant petition on May 8, 2015. His principal argument is, as it has been from the start, that the indictment was constitutionally defective because it did not give him fair notice of the charges, in violation of the Sixth Amendment. Pet. at 5.

## Standard of Review

Post-conviction federal *habeas* relief is governed by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, which provides that a writ of *habeas corpus* shall not issue with respect to any claim of a prisoner in state custody that was adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or, (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28

---

[4] *People v. Miller*, 23 N.Y.3d 965, 11 N.E.3d 722, 988 N.Y.S.2d 572 (2014).

5

U.S.C. § 2254(d); *see Gutierrez v. McGinnis*, 389 F.3d 300, 304 (2d Cir. 2004) (describing this standard as "AEDPA deference"). This deferential review is accorded to any state court decision disposing of a state prisoner's federal claim on the merits, regardless of whether that court gives reasons for its determination or refers to federal law in its decision. *Harrington v. Richter*, 562 U.S. 86, 98-99, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

"Section 2254(d) reflects the view [of Congress] that *habeas corpus* is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102-03 (citation and internal quotations omitted). With its mission targeting extreme malfunctions in a state criminal proceeding, AEDPA review "demands that state-court decisions be given the benefit of the doubt." *Hardy v. Cross*, 565 U.S. 65, 66, 132 S. Ct. 490, 181 L. Ed. 2d 468 (2011) (citation omitted). Where AEDPA deference applies, "[a] state court's findings of fact are 'presumed to be correct' unless rebutted 'by clear and convincing evidence.'" *Drake v. Portuondo*, 553 F.3d 230, 239 (2d Cir. 2009) (quoting 28 U.S.C. § 2254(e)(1)).

Given these ground rules, *habeas* jurisprudence is well-cabined. Emblematic of this understanding, for AEDPA purposes, "'clearly established federal law' . . . refers to the holdings, as opposed to the *dicta*," of Supreme Court decisions that are controlling law "as of the time of the relevant state court decision." *Williams v. Taylor*, 529 U.S. 362, 412, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). Moreover, a state court decision is "contrary to clearly established federal law," within the meaning of § 2254(d), if it contradicts relevant Supreme Court precedent or arrives at a different conclusion based on "materially indistinguishable" facts. *Id.* at 405-06. A state court decision is classified as one resting on an "unreasonable application" of federal law if it "identifies the correct governing legal principle from [the Supreme] Court's decisions but

6

unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. Even erroneous state court decisions, then, if deemed reasonable, will survive *habeas* review. *Id.* at 411.

But, there is a caution: the state court decision need not be "so far off the mark as to suggest judicial incompetence" before *habeas* relief may be granted. *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (citation omitted). "A federal court may reverse a state court ruling only where it was 'so lacking in justification that there was . . . [no] possibility for fair-minded disagreement.'" *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (quoting *Harrington*, 562 U.S. at 103). Still, as the Supreme Court has underscored, if the AEDPA "standard is difficult to meet [before federal *habeas* relief may be awarded]– and it is – that is because it was meant to be." *Burt v. Titlow*, 571 U.S. 12, 20, 134 S. Ct. 10, 187 L. Ed. 2d 348 (2013) (citation and internal quotations omitted).

## Discussion

Miller argues that the indictment was insufficient for the following reasons: (1) it did not allege every essential element of the crimes charged, omitting allegations as to the threat of the immediate use of physical force during the robberies; (2) Count One failed to allege "how and [in] what way" Miller displayed a pistol or revolver; and (3) "the counts in the indictment did not cite applicable sections of the Penal Law." Pet. at 5-6. He also contends, summarily, that the Second Department's decision was contrary to several specific Supreme Court cases. *Id.* at 6-8.

In his base salvo, Miller presents the state court denial of his appeal as an "unreasonable determination of the facts", rather than an unreasonable application of clearly established federal law. He rests his attack on the contention that "[t]he state court did not read the facts of defendant's brief correctly" in reaching its decision to deny his challenge to the indictment. Pet.

7

at 8. He argues that "the state court should have procedurally made a finding of fact but neglected to do so," ruling without holding an evidentiary hearing. *Id.* at 10. However, "[t]he sufficiency of an indictment is a question of law," not fact. *United States v. Stringer*, 730 F.3d 120, 123 (2d Cir. 2013). The issue before the Court, then, is whether the state court unreasonably applied clearly established federal law.

"Generally, a claim of an insufficient state indictment is not reviewable by a federal *habeas* court unless the indictment falls below basic constitutional standards."[5] *Mackenzie v. Portuondo*, 208 F. Supp. 2d 302, 313 (E.D.N.Y. 2002). The Sixth Amendment guarantees a criminal defendant the right "to be informed of the nature and cause of the accusation" against him. U.S. Const. amend. VI. The Supreme Court has explained the level of detail required to protect this right, stating in *Hamling v. United States* that an indictment is constitutionally sufficient "if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." 418 U.S. 87, 117, 94 S. Ct. 2887, 41 L. Ed. 2d 590 (1974) (citations omitted); *see also DeVonish v. Keane*, 19 F.3d 107, 108 (2d Cir. 1994) (per curiam) (indictment must inform defendant of charges and give "enough detail that he may plead double jeopardy in a future prosecution based on the same set of events") (citation omitted). In sum, due process is satisfied if, for each of its counts, an indictment

---

[5] There is language in petitioner's papers that suggests that he takes strong exception to the indictment as violative of New York's Criminal Procedure Law. But, with savvy, he does not appear to raise those exceptions on this petition. Had he done so, they would not have been cognizable. *See, e.g., Velazquez v. Poole*, 614 F. Supp. 2d 284, 331 (E.D.N.Y. 2007) (holding claim for failure to comply with New York Criminal Procedure Law § 200.50 not cognizable on federal *habeas* review).

8

provides "notice of 'the time, place, and essential elements of the crime.'" *Roman v. Napoli*, No. 08-CV-6561 (MAT), 2010 WL 4922627, at *8 (W.D.N.Y. Dec. 2, 2010) (citation omitted).

An indictment's statement of the offense may rely on the language of the relevant criminal statute, "as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.'" *DeVonish*, 19 F.3d at 108 (quoting *Hamling*, 418 U.S. at 117). In furtherance of this understanding, the Second Circuit has "consistently upheld indictments that 'do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.'" *United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999) (citation omitted). Moreover, quite critically, even where an indictment is deficient, due process is satisfied so long as the criminal defendant "receives actual notice of the charges against him," which may be attained through a bill of particulars or pre-trial discovery. *Padilla v. Brady*, No. 13-CV-7908 (JPO), 2015 WL 394090, at *9 (S.D.N.Y. Jan. 29, 2015) (citation omitted) (collecting cases) (adopting R&R); *see also United States v. McLean*, 528 F.2d 1250, 1257 (2d Cir. 1976) (recognizing that "particular facts needed in particular cases are obtainable by bills of particulars or discovery") (citation omitted).

Stated in other words, an indictment need not provide every conceivable factual detail of an offense to meet the fair notice requirement. Notwithstanding petitioner's protestations, that requirement was satisfied. Recapitulating with closer scrutiny, Miller was charged with one count of robbery in the first degree under NYPL § 160.15 (4), two counts of robbery in the third degree under § 160.05, and one count of attempted robbery in the third degree under §§ 110 and 160.05. R. at 45. The first page of the indictment lists these statutory sections, by codification number, and the accompanying section titles; each count repeats the title and essential elements

of the charged offense along with a factual recitation providing the basis for the respective charge. For example, the first page of the indictment lists "§ 160.15-4 Robbery in the First Degree (1)." *Id.* Count One, on the following page, charges Miller with "the crime of robbery in the first degree," arising out of his conduct on December 21, 2009, whereby he "forcibly stole . . . a sum of United States currency from Irina Mikhaylova for Apple Bank, and in the course of the commission of the crime or of immediate flight therefrom he displayed what appeared to be a pistol or revolver." *Id.* at 46. The other three charges, for third-degree robbery and attempted third-degree robbery, are recounted in the same fashion, setting forth the time, place, and facts of each offense and tracking the relevant statutory language regarding forcible stealing.

Petitioner's first argument seems to stem from his misreading of the applicable penal code section. He is agitated that the indictment failed to recite what he believes is an essential element of robbery, in that it did not specifically allege that he threatened the immediate use of physical force during the robberies. Pet. at 5-6. This misunderstanding tends to explain his related objection that the prosecution pursued a different legal theory at trial, namely, that the People argued, without charging that offense, that Miller threatened the immediate use of physical force upon each of the tellers. The indictment, on the other hand, he says, had alleged only that he "forcibly stole" from the tellers. Pet. at 12.

Miller correctly perceives that the two formulations are different, but the conduct described falls within the same section of the penal law. The distinction separating them has no legal significance. In short, "forcible stealing" is the use of force or threat of the immediate use of force in the course of larceny. NYPL defines robbery as "forcible stealing." N.Y. Penal Law § 160.00; *see also id.* §§ 160.05 (defining third-degree robbery), 160.10 (defining second-degree

10

robbery), 160.15 (defining first-degree robbery). "Forcible stealing" occurs when a person

> in the course of committing a larceny . . . uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) Compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny.

N.Y. Penal Law § 160.00. As a result, where each count of the indictment alleges that Miller "forcibly stole certain property," it thereby implicitly alleges that he used or threatened the use of force in the course of the robbery—because that is included in the definition of forcible stealing. Similarly, the prosecution's argument at trial that Miller threatened the immediate use of physical force is neither a constructive amendment of nor variance from the indictment's allegations that he forcibly stole; it is merely a completely accurate restatement of the kind of conduct that falls squarely within the definition of "forcible stealing" under New York law.

To the extent that Miller bases his argument on his view that the indictment did not reference the manner and means of how he conveyed the threat of the use of force, he relies on an overly rigid interpretation of constitutional fair notice requirements. The fair notice standard is met when the charging instrument sets forth the acts the prosecution claims establish the defendant's violation of particular laws. It is a standard the People met. Not only did the indictment give Miller notice of the dates, times, places, and primary conduct charged, but that notice was amplified through pre-trial disclosures and was refined further by a bill of particulars.

Specifically, in response to Miller's demand for a bill of particulars, as ordered by the trial court, the People provided the exact times, dates, and locations of the alleged offenses, then referred him to the corresponding criminal complaints that detailed the robberies. R. at 64-65. In the criminal complaint related to Count One, Detective Michael Devecchis provided a sworn account of his investigation, including information gleaned from the statement of bank teller

Irina Mikhaylova, documentary evidence, and Miller's own admissions. Mikhaylova informed Detective Devecchis that "between 2:00 p.m. and 2:10 p.m." on December 21, 2009, an individual entered Apple Bank, "approached her teller window and handed her a note which stated 'I want $3,000 dollars. I have a gun. It [*sic*] not I will wait until you come outside. No dye packs.'" *Id.* at 7. Mikhaylova told Detective Devecchis that she handed the individual "approximately $2,000 dollars in United States currency and that the individual then fled the bank." *Id.* Detective Devecchis obtained the demand note from the bank and presented it to Miller, who admitted to writing the note and carrying out the robbery as described by Mikhaylova. *Id.* Miller also confirmed to Detective Devecchis that "a still picture taken from inside the bank at approximately 2:00 p.m. on December 21st, 2009, is of himself." *Id.* The criminal complaints corresponding to the other counts describe the other robberies in similar step-by-step detail, relying on the same combination of documentary evidence, witness statements, and Miller's admissions. *See* R. at 1-6. In addition to the criminal complaints, the District Attorney disclosed the substance of Miller's statements to Detective Devecchis, in which Miller admitted to the robberies, and offered to make available to Miller surveillance videos. *Id.* at 65, 67.

With the supervisory imprimatur of the trial court, the quantity of disclosure and the amplification of the indictment in the bill of particulars more than sufficiently provided Miller the fair notice the Sixth Amendment requires. Furthermore, Miller's *pro se* motion to dismiss, in which he asserted that the indictment "failed to establish the act was pursued through a note demanding the cash," demonstrates that Miller was completely aware of the particulars of the charged offenses even though the indictment did not mention every factual detail. R. at 21. In the same motion, in fact, he crafted an affirmative defense regarding the notes, arguing that

12

"[t]he implied statement of possession of a firearm in the note[s] was not a threat to use physical force," and, even if it was, his phrasing did not convey a threat of "immediate" use of force, but of potential use of force at some point in the future. *Id.* at 22. As shown by the indictment, the substantial pre-trial discovery, and Miller's formulation of defenses responding to the prosecution's theory of the case, Miller's contention that he lacked actual notice of the charges against him is meritless.[6] *See Mackenzie*, 208 F. Supp. 2d at 313-14 (fair notice provided by indictment stating time, place and "essential elements" of crimes plus government's pre-trial disclosures).

Miller's second challenge concerns Count One's reference to his display of "what appeared to be a pistol or revolver" during the December 21 robbery. He argues that the indictment should have alleged "how and [in] what way defendant displayed" a firearm. Pet. at 6. However, to prove the crime of first-degree robbery under § 160.15, the prosecution is required to show only that the defendant displayed what appeared to be a firearm. *See* N.Y. Penal Law § 160.15(4). A specific manner of display is not a required element of the crime, nor is the manner of display a factor in distinguishing between different degrees of robbery; nor is it an affirmative defense under § 160.15.[7] *See* N.Y. Penal Law §§ 160.10, 160.15. More importantly here, "nothing in the Constitution entitles Petitioner" to "factual details as to the

---

[6] On a related note, Miller also argues that "the *counts* in the indictment did not cite applicable sections of the Penal Law." Pet. at 6 (emphasis added). As discussed above, that claim is factually bogus. The recitation in the indictment of the sections of NYPL upon which the charges are grounded more than adequately satisfies all commands of the Constitution.

[7] This section does provide for the affirmative defense that the firearm "was not a loaded weapon from which a shot . . . could be discharged," which Miller successfully invoked at trial, resulting in the jury's reduction of Count One to second-degree robbery. *See* N.Y. Penal Law § 160.15 (4).

specific acts he allegedly engaged in." *Bowman v. Ercole*, No. 09-CV-4801 (RJH)(THK), 2010 WL 6620879, at *27 (S.D.N.Y. Sept. 1, 2010) (emphasis omitted), *R&R adopted*, 2011 WL 1419614 (S.D.N.Y. Apr. 11, 2011); *see also Rodriguez v. Smith*, No. 10-CV-8306 (KMK)(LMS), 2015 WL 6509153, at *6-8 (S.D.N.Y. Oct. 28, 2015) (rejecting argument that indictment on sexual abuse charges was defective because it "did not specify the type of sexual contact Petitioner allegedly had with the victim" where it tracked language of statute, disclosed initials of victim, and stated "approximate date and location" of offense). Accordingly, this argument, too, is without merit.

Finally, Miller argues that the Second Department's ruling regarding the sufficiency of the indictment was contrary to the Supreme Court's decisions in *United States v. Resendiz-Ponce*, 549 U.S. 102, 127 S. Ct. 782, 166 L. Ed. 2d 591 (2007), and *Neder v. United States*, 527 U.S. 1, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999). Pet. at 6-8. In *Resendiz-Ponce*, the Court held that an indictment for illegal reentry was not defective where it alleged that the defendant "attempted to enter the United States" after his deportation. *Resendiz-Ponce*, 549 U.S. at 107. Even though the indictment did not state an overt act that was a substantial step in the commission of the offense, the word "attempt" implicitly satisfied that element, since "attempt . . . connote[s] action rather than mere intent . . . [and] encompasses both the overt act and intent elements." *Id.* *Resendiz-Ponce* did not raise the bar set by the Court in *Hamling*; it simply applied the *Hamling* analysis to the indictment before it. *See id.* at 108 (indictment's reference to "attempt" coupled with "time-and-date specification" of charged conduct satisfied *Hamling*). Insofar as Miller challenges his indictment for alleging "forcible stealing" but not the threat of the use of force, *Resendiz-Ponce* actually weighs against his argument, by establishing that an indictment is not deficient where it implicitly alleges an essential element of an offense.

As for *Neder*, it is just inapposite. In *Neder*, the Supreme Court held, first, that a district court's failure to instruct the jury as to the materiality of false statements to tax fraud charges constituted harmless error, and, second, that "materiality of falsehood is an element of the federal mail fraud, wire fraud, and bank fraud statutes." *Neder*, 527 U.S. at 20, 25. The questions of proper jury instruction and the required elements of federal fraud statutes are utterly unrelated to any issue concerning whether a state law indictment charging state law robbery has provided fair notice as required by the Sixth Amendment.

At bottom, the state court's rejection of Miller's challenge to the sufficiency of the indictment was neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the Supreme Court. On the contrary, the indictment not only met, but surpassed, the constitutional requirement of fair notice. Accordingly, the writ must be denied.

## Conclusion

In line with the foregoing, the writ of *habeas corpus* is denied, and the petition is dismissed.

Since petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. *See* 28 U.S.C. § 2253(c)(2). The Court certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Memorandum and Order would not be taken in good faith and, therefore, *in forma pauperis* is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

The Clerk of Court is directed to mail a copy of this Memorandum and Order to petitioner, to enter judgment accordingly, and to close this case.

So Ordered.

Dated: Brooklyn, New York

February 27, 2019

s/ Eric N Vitaliano

ERIC N. VITALIANO

United States District Judge